We will hear argument next in Case 13-534, North Carolina State Bd. of Dental Examiners v. the Federal Trade Commission. Mr. Mupan. Mr. Chief Justice, and may it please the Court, a State regulatory agency does not lose its State action antitrust immunity simply because the agency is run by part-time public officials who are also market participants in their personal capacities. The FTC's contrary position that the agency's officials must be disinterested cannot be reconciled with this Court's jurisprudence for three reasons. First, respect for federalism requires deference to a State's sovereign choices concerning how to structure and manage its own regulatory agencies. Second, the regulatory conduct of public officials, who are also market participants, cannot properly be equated with the conduct of private business people. And third, the FTC's position would be massively and needlessly disruptive. States obtain valuable benefits from using market participants as part-time public officials. They gain the benefits of their expertise, and they gain the benefits of not having to have a full-time bureaucracy with a full salary. Alito Is it a question of Federal law or a question of State law, whether the members of the — whether this Board is a State instrumentality? Ultimately, whether this Board should be entitled to State action immunity is a question of Federal law. But in whether — characterizing the Board as public or private, we submit that, absent extraordinary circumstances, the Federal court should treat a State's designation of a State entity as public, and that when that entity is charged with public duties, as a State entity. Well, if you agree that a State can't simply deem something that, for all other purposes, is private to be a State entity or instrumentality, there has to be some test. So what would the test be? So we think the fundamental key is that it's not just that they're designated as State officials, but they are charged with a State law duty to enforce State law. They are not acting pursuant to their unfettered private discretion to choose whatever regular — whatever choices maximize their personal profit. They are obligated to do that. Ginsburg. In one puzzle in this case, why should there be an antitrust exemption for conduct that is not authorized by State law? The objection here was that this Board was issuing a whole bunch of cease and desist orders. They had no authority to do that, no authority at all. Well, two points about that, Your Honor. First, it's not quite right to say that this Board didn't have authority to issue these letters. It is true that the Board doesn't have authority to issue self-executing orders akin to an injunction. But it is also true that the Board has authority to send letters to prospective non-dentists saying that if you don't cease and desist your conduct, we will sue you. The only question in this case in terms of State law authority is whether the wording of these letters was somehow problematic. No State court has ever determined that that is a problem, and more fundamentally, all of that is a question about whether there's a clear articulation here, and the FTC has assumed that there is a clear articulation. Kagan. And Mr. Muven, can I take you back to Justice Alito's question? Because I think you said in response that the question, that the answer was has the State asked the organization to enforce State law, and given, entrusted them with that responsibility. So suppose a State just looked around and found a trade association and said we think that that trade association is going to be a very good enforcer of State law. And made the trade association a State entity. That's the board that's going to regulate this industry. Would that be sufficient? If they had a State – if they took an oath to the State to enforce State law, if they were subject to the traditional duties that a public entity has, if they had to comply with the Administrative Procedures Act and the open records rules and the ethics laws, if they were subject to judicial review, absolutely. Which of those are the important ones? Do all of them have to be there? We think the absolute key is that they're subject to a State law duty, that they have sworn an oath to the State to enforce State law and not to maximize their own private interests. Scalia. I don't – I think in the trade association case, I get off your train. It seems to me it's quite different to appoint a – what should I say? An entity that is already a conglomerate, which is already a contract or combination of individuals, and to authorize that separately created combination of individuals to enforce State law. I think that's quite different from saying we're going to have a board composed of dentists and we're going to pick the dentists. Well, it is different, Your Honor. And they're serving only in their individual capacity on this board, whereas the people in the trade association you're talking about are, I guess, the governors of the trade association are elected by the members, right? Well, but that's the key, Your Honor. I agree it is a more difficult case, but if the State law had basically drafted a private trade association and said you will serve two hats, sometimes you will act as a private trade association, but sometimes you will be the entity of the State that is responsible for enforcing State law. You have a State law oath to enforce State law. You cannot take your actions to maximize your private gain. What you're doing here is enforcing State law. Breyer. What if, my goodness, there's a lot of cases, I would have thought it was well established, that if, in fact, the State says to a group of wine merchants, you go fix your own wine prices, be sure they're reasonable, or to a group of truckers, you go set your own trucking prices, but be sure they're reasonable, et cetera, et cetera, that they can do that if and only if there is supervision. And because, you know, they might get out of hand, the wine merchants or the truckers or anybody else. I started from that proposition. You seem to be questioning that proposition. Not at all, Your Honor. If we accept that proposition, then how is your case any different? Because what we have here is we have a group of dentists, like the group of wine merchants, like the group of truckers, and, of course, they're not fixing prices, what they're doing is deciding who will be in the business, and there we are. End of case. Is there supervision? Yes or no? The FTC says no, there isn't, and I don't want to know what you say. The fundamental difference between the hypothetical you posed in this case is that when you have private people who are authorized to set their own prices, even if the State statute says they must be reasonable, they are exercising their discretion about what is reasonable in terms of maximizing their personal profit. They are not acting as fiduciaries of the State. They have no obligation to the State. They have not sworn an oath to the State. They are not subject to the State's administrative procedure. No, no, no. We put all that in. We put all that in. We say our truckers and our wine merchants swear an oath. I swear that I am a member now of the State commission setting prices, and I swear that I will be reasonable. Okay? You think that would have changed the MidCal result? Well, since those are essentially the facts of Parker, I do think it would actually change the result. The commission in Parker. All that happened, all that happened is they take an oath. For all I know, maybe the MidCal wine people did take an oath. They didn't, and it is no small thing. Is there anything else? Is there anything else besides the oath? Is this case identical to MidCal, except they took an oath? No. So compared to MidCal, there is literally no substantive standard whatsoever in the California statute. They were free to set whatever price they want, not even a reasonableness constraint. In addition, not only is there the oath, there is the fact that they are subject to all the traditional duties that public entities have. They have to comply with the APA, the State ethics rules, open meetings rules, public records laws, and none of that was. But why isn't it entirely reasonable to say, yes, this can be a State actor, but because they are made at the same time the State says they must be in private practice, so they are both a State actor and they are a private actor. So, yes, you can have such a board, but there needs to be a check of supervision. That is, they can't just go make their regulations without approval from some State entity, and they can't go around issuing cease and desist orders. They have to come to a court if they want to, and the Court would act as a check. Why shouldn't, because of the risk that these people have of self-interest, why shouldn't there be a check of the kind that MidCal? Because fundamentally it is a question for the State to determine whether it wants to bear that risk. These are the State's officials, and the State has made a different choice. The State has decided that the benefits of having market participants make decisions and not having their every — each and every decision actively second-guessed by a higher level of bureaucracy is worth it. Sotomayor, it really begs the question, if we give immunity because only when we have a clearly defined State intent, a policy accepted and created by the State, how is the State doing that when all it's doing is letting dentists elect the representatives of their board? This is not an appointed position. This is an elected position by dentists of each other. How is the State going to be any different in giving that group of private actors a pass on antitrust litigation that when they have a self-interest that's inherent in their occupation? Well, the State gets involved at the front end in two ways. First, there has to be a clearly articulated anti-competitive policy. And in this case — And what is that clearly articulated policy? In this case, it's been assumed by the FTC that that is satisfied here. What I would submit is the reason it exists is because the Dental Practice Act says that only licensed dentists can practice dentistry. That is on its face inherently anti-competitive. But is there any clear policy that teeth whitening is the practice of dentistry? I thought that that was determined before the standard about removing stains on teeth, that that was before anybody ever knew about whitening. That's an interpretive question under the statute. And what this Court has held in cases like Omni is application of a clearly articulated State policy is a question for State administration. But how can it be clearly articulated when the problem being addressed didn't even exist when the policy was articulated? For the same reason that in Omni, for example, the State had authorized zoning. But they hadn't asked whether the particular ordinance passed in Omni was confined with substantive and procedural law. And what this Court held is once you have at that threshold a statute that authorizes the displacement of competition, how public officials implement that statute is a question for State administrative review. Kennedy, this isn't a question for State administrative review. Kennedy, does the Federal Government, the FTC and the Sherman Act, have an interest in ensuring that regulators do not pursue their self-interest? They do not. That is inconsistent, then, with what we said in Holly. The City of Holly, we said this is not a case in which we're concerned with entities pursuing their self-interest because it's the City. I don't think that the Your Honor, with all respect, I don't think that's the correct interpretation of Holly. I think if you look at that paragraph in its entirety, the sentence immediately prior to the sentence you just quoted said that the risk that we're worried about is that the State is circumventing the Federal antitrust laws. The concern was not that the officials were going to act contrary to the State's own interests, it was just authorizing them to violate Federal law. And then two sentences after the sentence you just read, what the Court said is if the concern is that they have parochial interests, well, what clear articulation solves that problem. But if there's any ambiguity about what Holly says on this, it's resolved by Omni. Because if ever there were a case where the State's officials had a self-interest, where they might have been acting contrary to the State's own interests, it's when the State's officials are being bribed by private parties. Kagan.  Ms. Kagan, you have to explain that understanding of Holly to me. And Holly is a very important case because it essentially asks the question that's right here, which is we have this odd entity and we have to decide whether that entity is more like just private parties, or is more like a prototypical State actor. And there we say it's more like a prototypical State actor. And how do we get there? We say the requirement of active State supervision is a way of ensuring that the actor is engaging in the challenged conduct pursuant to State policy. And we need to have that test, we need to have that test, when there's a real danger that the party is acting to further his own interest, but not when there's not such a danger. And here that suggests that the question is, is this party, this board of all dentists, is there a danger that it's acting to further its own interests rather than the governmental interests of the State? And that seems almost self-evidently to be true. With all due respect, Your Honor, I think you skipped a sentence in Holly. In between the first sentence and the second sentence you read me, there is a sentence that says the risk, the purpose of the active supervision requirement is to prevent the State from circumventing the Sherman Act. The danger that the Court was talking about in the sentence you read is the danger that the State is just authorizing private people to violate Federal law rather than having its own State policy. And that is what the Court meant in Holly when they said there was no danger. There is no danger that the State created a municipality as an elaborate sham to allow private people to violate Federal law under the auspices of a municipality. Kennedy. But the concern is that there is no State policy if the State simply says we — you take an oath and then you do what you want. And if the Board says we think what's good for dentistry is good for South Carolina or good for North Carolina, our cases say that's not enough because you're pursuing your self-interest. Well, that's true, Your Honor, because there the statute says do what you want. But that's not what the statute here says. And a statute that says do what you want wouldn't be a clearly articulated policy to displace competition. Here what the statute says is only licensed dentists can practice dentistry. That is a clearly articulated policy to displace competition. And the only question is whether the State's officials have properly implemented  It is — Roberts Why is a statute that says do what you want not clearly articulated? Because it's neutral. It clearly — I'm sorry. It says clearly — do what you want so long as it promotes the dental — the monopoly of dentists. If it said do what you want to promote the monopoly of dentists, I guess at that point it would be a clearly articulated policy to displace competition. In a circumstance like that, where all that was at issue was a broad standard to do whatever was best for the dental practice, and they were private parties, and they were subject to no other type of judicial constraints, maybe that would be the sort of situation — So it's not enough just to say, oh, you're a public agent or you're a public official? As I said to Justice Alito at the outset, in extraordinary circumstances, perhaps this Court could say that what has been deemed a public agency by the State is essentially a sham. But this is far from that. The board in this case is structured like — the work of the board in this case is accomplished like every other State agency. It is subject to the administrative procedures rules. It's subject to public records laws. It's subject to ethics. None of that's responsive to the concern that the State policy is purely to displace competition by promoting the self-interests of the dentists. They can do that in an open meeting. They can do that, let everyone look at their records, but — It's responsive to the fact that if these people are acting contrary to the State's principles, then the State has chosen to deal with it in a certain way. And the fundamental question in this case is, does Federal law second-guess how the State has chosen to deal with this problem? And what we know from cases like Omni — The antitrust exemption is a matter of State law — of Federal law, not State law. So it's — the Federal law sets the dimensions of what fits within this State action. It's not up to the State to create the State action exemption. It's Federal law, and what its meets and bounds are are also Federal law. That's true, but the line that this Court has consistently drawn from Parker onwards is that the Sherman Act does not apply to the acts of States or their officials when implementing laws directed by the legislature. And absent extraordinary circumstances, I would think that Congress did not intend for Federal courts to second-guess whether a public entity is really private. That would put Federalism on the test. Ginsburg. And tell me if I'm wrong about this, but I thought that the State action exemption was adopted and announced by this Court. It was. Nothing spelled out in the law. It was adopted by this Court. It's a version of a more general, clear statement rule that this Court has consistently applied, that we don't — the Court does not assume that Congress lightly intends to intrude on court sovereign prerogatives. It's just like cases like Gregory v. Ashcroft. What the Court said in Parker is nothing in the Sherman Act's text or history indicates any intent to interfere with sovereign State regulation, and therefore States are not subject to the Sherman Act. And the question in this case is, one, you have a State entity that the State has labeled as a State entity, but not just labeled, charged with a duty and subjected to all the duties that State agencies normally have. Ginsburg. There's another factor that the State has stipulated, that is, the State has said, and the members of this Board, must be private practitioners. That is not your typical State agency. Well, it actually is the typical way of regulating the professions. Every State medical board, every State medical board. And it may be so, and that's why the FTC says we need a check, we need the mid-count check of some genuine State supervision over private. Well, I would submit it would cut the other direction, that we should we would require a very clear intent that Congress intended to oversee and regulate the most traditional way of regulating the professions that States have historically used and have consistently used for a long time. What would happen if the North Carolina courts were to interpret the North Carolina statute that says that removing stains from teeth is the practice of dentistry to apply to whitening? What would the what would that mean for this case? Because that seems that's an unanswered question, isn't it? An unanswered question of North Carolina law. It is an open question. If they were to interpret it to say that it was the practice of dentistry? Yes. Well, I'm not sure what it would have to do, the effect it would have on this case, because the FTC has already assumed that we are satisfied the clear articulation requirement. I assume it would make their case harder on remand to dispute that we were acting pursuant to a clearly articulated policy. But in terms of going forward, whether we the Board is correct about the meaning of the State statute is a question of State administrative review. If the State courts were to reach the opposite conclusion, then the Board would have to stop this enforcement practice, and they could be sued in State court if they did. The fundamental question here is whether Federal courts need to second-guess these State administrative questions. Just like in Omni, it was possible that the zoning ordinance that the city council promulgated in Omni was in violation of State law. There were all sorts of substantive and procedural requirements that needed to be followed. And this Court didn't ask whether any of those things were satisfied. This Court said that that is a question for State administrative review, not for Federal antitrust law, because the Sherman Act was never intended to supplant State administrative review. That would turn Federalism on its head. And again, I would like to emphasize that that was in the context of city council officials who were allegedly being bribed. If city council officials who are allegedly being bribed are entitled to immunity, I find it very difficult to understand how the mere existence of the law. Breyer's difference is that city council officials are State officials, and a local wine merchant is a local wine merchant. He is not a State official. That's the obvious difference. Well, but these people, these are not just local wine merchants. These are people who are federal. Breyer's other argument, I can understand your argument as saying, no, there is enough Stateness in this that they become State officials. That's an argument I understand. I don't understand how Omni supports you, because there they were clearly not private people. I mean, they weren't private merchants. The evil we are trying to get at was not present. I guess the fundamental key is that I don't really take the FTC to be disputing that these are public officials. What they are saying is they are public officials who have a conflict of interest. They are saying that they are not disinterested public officials. They are not saying that they are actually private people. They are not saying that they are private people. They have to be, because they are. By State law, they must be private practitioners. They cannot be full-time civil servants. They can't be on this Board unless you are a regularly practicing dentist. They are also private people. They have two halves. It's not just that they are private people. The object of the antitrust laws is to prevent private individuals who compete with each other in business from getting together and making agreements. That kind of interest seems present here, present in Midcall, and present in all the other cases, but not present in Holly, because in Holly they were private, yes, but they are not business people about to make agreements with each other in the sense that the antitrust law is concerned. Well, two points about that, Your Honor. First of all, in Parker, the people on the commission were in fact market participants, and yet this Court still treated that. If you don't, you might not agree with my analysis, and you need to go on with this, because I'll work that one out. Okay. So, and setting aside Parker, I think the more fundamental point is the Federal antitrust law shouldn't be interpreted to second-guess whether a public official is really private just because they have a conflict of interest. Sotomayor, do we set aside Goldfarb? No. Goldfarb, the basis of this case is that the Federal antitrust law should not be interpreted as a conflict of interest. Goldfarb says the fact that the State bars a State agency for some limited purpose does not create an antitrust shield that allows it to foster anticompetitive practices of the benefit to its members. Absolutely. Goldfarb. What you need in addition is a clearly articulated policy to displace competition. That was lacking in Goldfarb, as the Court explained in Goldfarb and has reaffirmed in cases like Southern Motor Carriers, and it is present here, and the FTC doesn't dispute, at least for present purposes, that it is present here. The question in this case, unlike in Goldfarb, is whether a board that has public that has market participants on it are entitled to immunity even when enforcing a clearly articulated policy to displace competition. But, Mr. Mubin, the two prongs of Midcow are supposed to operate in tandem with each other. They both have a role to play in ensuring that an actor is in accord with the State policy and is not acting solely to further his own interest. So the first prong comes along and says here's what there needs to be, a State policy, and then the second prong, because we understand that that policy is not going to answer all questions, there are going to be lots of little things that the actor does, and the question is going to be, are you acting in accord with that State policy or not? And then there needs to be some supervision to ensure that the actor is acting in accord with State policy. So to strip the second half of the test off is to leave the first half of the test essentially, you know, meaningless, might be too strong, but unprotected. There's no way to make sure that the people are acting in accord with State policy rather than to serve their own interests. Your Honor, I just fundamentally don't think that that is the point of the second prong. The point of the concern that you're articulating, the way to solve that problem is through State administrative review. That's what Omni held. If there's a possibility that State officials are misapplying State law or deviating from State policy, that can be solved through State administrative review, and Federal antitrust law was never intended to second-guess that question. What active supervision is intended to do instead is to prevent the State from authorizing private people to violate Federal law, even if that's what the State wants. Take a case like Midcow, the canonical active supervision case. Kagan. I think all over, Mr. Mupan, it's in Patrick v. Burgett, it's in other cases, that the active supervision prong is to make sure that the action is the State's own, is in accord with the State's policy. That's what it's doing. By State's own, what the Court meant is they are not just authorizing private people to act illegally. Take a case like Midcow where the State said go set prices. No substantive standard whatsoever. There was no reason to think that the private people were acting contrary to the State policy, because the State just wanted to let them fix prices. The point of active supervision in a case like Midcow is to make sure that private parties are not just being authorized the power to violate Federal law, because private parties are presumptively subject to Federal law, and the only way they can get immunity is if their actions are made the State's own by the State's supervision. That is not necessary when the State has already made their conduct their own by making them public officials and charging them with the State law duty to enforce State law. If I can reserve the balance of my time. Roberts. Thank you, counsel. Mr. Stewart. Mr. Chief Justice, and may it please the Court. If the dental board were designated a private agency, this would be a paradigmatic case illustrating the reasons that active supervision is required. The board members, the majority of them at least, are required to be practicing dentists. They have an evident self-interest in the manner in which the dental profession is regulated and in regulations that might keep other people from competing with dentists. That natural self-interest is reinforced by the method of selection. North Carolina law provides that the members of this dental board will be selected not by the governor or by the public, but by the community of dentists. Kagan. You're not suggesting or are you that that's critical to your case? Stewart. We're not saying that that's critical. That's simply and that's. It's just like an add-on feature. That's right. And that's the way the commission treated it in its opinion. The commission didn't suggest that the outcome would have been different if the method of selection had been different, but it. Scalia. What do you do about a State supreme court that sets the ethics rules for the legal profession, including what constitutes the unauthorized practice of law? And let's assume the State has a requirement that all the members of the State supreme court have to be lawyers. What do you do about that? I mean, this is essentially Goldfarb. Goldfarb involved the Virginia Bar. It was designated as a State agency as a matter of law. I'm not talking about the Virginia Bar. I'm talking about the Supreme Court of Virginia. Well, the Court of. Are you going to say the Supreme Court of Virginia has to be actively supervised? No. The Supreme Court of Virginia, the Supreme Court of any State, like the State legislature, speaks for the State itself. They're all lawyers. And that is simply an unavoidable exception, if you will, to the general requirement. But they're not practicing law. They're not practicing lawyers. Whatever self – whatever marginal self-interest they might have is outweighed by their status as Supreme Court Bar member – as Supreme Court justice. Well, presumably they also set judicial ethics rules. They would set judicial ethics rules. But what I was saying about Goldfarb is that Goldfarb dealt with the relationship between what the Virginia Supreme Court did and what the Virginia Bar did. And it said, of course, the ethics rules promulgated by the Virginia Supreme Court would be the authoritative State policy. Now, let me pursue this, because I think that's the question exactly that's bothering you. But I have another example of the same thing. And I think this is, for me, a very difficult case. On the one hand, I absolutely understand the cases, and I understand why. At least, I think I do. You would be pretty careful about having a group of wine merchants set their own prices or decide who can sell wine. And the same is true of a group of railroads. And the same is true of a group of truckers. And the same is true of, of, of, of, okay, probably including dentists. And so what we have is a set of pretty tough rules saying the State better get in there and supervise, or you're subject to the antitrust laws. That, to me, is the state of the art. And that all seems fine, and you seem to find it, until I thought of a different example. Now, what they are is they're neurologists, and they're brain surgeons. And what the State says is, we would like this group of brain surgeons to decide who can practice brain surgery in this State. Now, I don't want a group of bureaucrats deciding that. I would like brain surgeons to decide that. Of course, the risks are. And so we have to have some supervision, I guess. What? What kind of supervision? And why isn't that present here? A, any rule has to go to some rule revision agency. B, before they can throw anybody out, they have to go into court and get a court order. And C, even these letters would be subject to their State APA. So if I'm on your track, I want to see you talk about the neurologists and any kind of serious medical board, and I don't want to suddenly destroy all the temptation of medical boards throughout the country, to decide everything in favor of letting in the unqualified person lest he sue them under the antitrust law for treble damages and attorney's fees. Those are the things that are going to — have you followed where I'm coming from? And I very much appreciate your comment. What is true of the dental board in North Carolina and could also be true of the neurology or the more general medical board in another State is, as you say, any regulation that the board promulgates as a matter of North Carolina law is subject to review by the Rules Review Commission. And that's a body of disinterested State actors who pass on the validity of the rules, that the standard in the statute is the Rules Review Commission determines is the regulation reasonably necessary to implement the statute, which at least suggests to me that the Review Commission is engaged in something like de novo review. Does this reflect a correct reading of the law? Really, really, you're going to have a review board composed of non-neurologists deciding de novo whether a particular person should be admitted or a particular rule should be adopted? For rules. And the basis for that — I don't want that. I want a neurologist to decide it. If you — if the State wanted a board of expert practitioners to be able to promulgate rules and have those rules reviewed deferentially within the State agency, then the question would arise, is deferential review sufficient to constitute active supervision? If it were de novo, yes. Patrick v. Burgett makes clear that extremely deferential review, review only for procedural regularity, is not sufficient. And the question, is Chevron-type review enough, that's an open question. But the main point I'm making about the Rules Review Commission is North Carolina evidently doesn't believe that there's anything amiss with an agency — the Rules Review Commission, an agency composed of non-experts reviewing the regulations promulgated by an expert body for consistency with the governing statute. Now, the question of exclusion of an individual member, a proceeding to revoke the license of a particular practitioner, whether or not that would qualify for State action immunity, it's very unlikely to have adverse consequences for competition as a whole, and therefore would not likely be a subject of antitrust concern. I'm sorry, Mr. Chief Justice. Alito, could you tell me as precisely as you can the contours of the rule that you are advocating? You told Justice Kagan that election isn't essential to the analysis here. So is it essential that the statute — that the statute stipulates that the members must be dentists? If they were appointed by the governor, would that take care of it? If the governor had to appoint dentists, would that — would that involve the same problem? Is it essential that they must all be dentists? What if there's a breakdown between dentists and — and non-dentists? I mean, the commission's opinion, I think — What if — let me just add this. What if there is no requirement that they be dentists, but the governor always chooses dentists because there's a very powerful dentist lobby, so he's always going to put dentists on this board exclusively? I'd say two things. I'd say three things, maybe. I think, first, we would say our theory still applies, that the self-interest would be present whether or not they were required to be dentists. The second thing we would say is, but that's a harder case. In that situation, you would at least need to look beyond the statute books in order to determine whether the people were dentists, and you would get at least a little closer to omni, which is a — But this is what troubles me about your position, because it would — it seems to lead to a case by a State-by-State, board-by-board inquiry by the Federal courts as to whether the members of a regulatory body are really serving the public interest or whether they have been captured by some special interest. But I guess the third point I was going to make is we're not aware of any board like that. That is, the amicus briefs on both sides say that it is a frequent practice for States to establish regulatory boards that are required by law to be composed of members of the profession being regulated. And the amicus briefs on the other side say that's a good and efficient practice. The amicus briefs on our side say that's a problem. But they all agree that that is a prevalent practice. No one — Well, under that practice, you said it's not an antitrust violation. Boycott. You know, the guy didn't get into the profession.  Antitrust lawyer says, I'm out of the profession. I'm out of this profession. I would offer them competition. We only have 82 qualified people in this specialty in this State. Now there's only 81. That makes a difference. Their questions are unfair. They're against me, and for a bunch of reasons. Silver v. New York Stock Exchange, you know, it's not so hard to make up reasons. So I'm — I mean, I don't want to cut you off from Justice Alito, but I'd like you also, in doing that, to think about what my problem is. It's the neurologists who are subject to the antitrust suit. And the answer seems to lie in the kind of supervision that you're advocating. Now, go ahead, go back to Justice Alito, but I put that in your mind. I mean, I guess the point — the point I was going to make is, while there is a frequent practice of States requiring by law that regulatory boards be staffed by members of the profession, there appears to be no instance in which the State left it up to the Governor to decide whom to appoint, and the Governor chose to appoint only practitioners. I mean, part of our point in this case — So does that mean that that is what's critical, in your opinion, that there is a State statute that says they must be dentists? If that weren't there, but the Governor always chose dentists because he wants the dentists to vote, and the dentists are very powerful in that particular State. We're not prepared to give that up, but we don't think that that's as strong a case. I mean, the fact that they are required to be dentists signals that they are there in their capacity as such, that they are — If you're not prepared to give that up, then I really don't understand the contours of your rule, and I find it troubling, because I really am not attracted to the idea of Federal courts looking at State agencies, State regulatory entities, to determine whether they're really serving the public interest or they're serving some private interest. Well, we're certainly not advocating that the court look to the internal — the subjective decision-making processes of the individual members. That is, if the members were — if the membership of the board were people who had no active participation in the dental profession, who had no economic interest, the court at Omni Outdoor certainly made clear that the court is not supposed to be probing whether, in fact, an individual board member made a decision based on illicit criteria. Sotomayor, same sort of question. Suppose that, you know, we come out with a ruling that makes clear that an all-dentist board is not okay, and then a State says, okay, we'll do a board with five dentists and three non-dentists. How do we feel about that? It would still be a majority, or I think the commission used some phrase like decisive coalition. And in this case, in a sense, the majority treatment of the dentists on the board was exacerbated. Only six of nine of the board members are actually practicing dentists, but the other members report — What about ex-dentists? They're no longer practicing, but they're all dentists. So they have a lot of dentist friends. They're sympathetic to the profession of dentistry. You're going to give them a pass? I think if the board were composed of retired dentists, people who were selected because they had expertise but no current financial interest, that would be a legitimate way of saying it. That's okay. Okay. You really think that the financial interest of the individual members of the board is going to be significantly affected of each individual member of the board? My goodness, I find that hard to believe. I guess to my — to my previous answer, I should add, if those board members were selected by a dispassionate State official, that is, there could also be circumstances in which board members themselves had no financial interest, but were selected by those who do, and that might be treated as a — Well, going back to Justice Alito's question, if we have to look at it board by board, if I were a private practitioner and Justice Breyer's hypothetical, a neurologist came to me and said, I think it's very important for us to do standards, can I get on this board? I say, have no part of it. Triple damages, attorney's fees, you can't even afford to defend this case. Get off that board. That's going to be the consequence of your — of the rule you advocate, it seems to me. There's no problem with active participation by — there's no problem with the board — boards being staffed by active practitioners so long as they are adequately supervised. Breyer. That consists of, if you want my off-the-cuff idea, which is probably not particularly good to give you, that actives that supervision consists of either your board on regulation or a court which, when reviewing what they do, does so with an awareness of the State law on the subject and also the risks of anti-competitive harms, ready to set it aside if, in fact, those risks, which are outside what the State law wants, seem likely to eventuate. Now, I could write such a standard pretty vaguely, and that's not necessarily the right standard. But this whole thing turns to me on what the supervision consists of and whether it's good enough or not here. And so that's why I repeat for the, you know, like the third time, and I think you probably, the government doesn't have a definite position on this on what it consists of. I mean, there are different. Not that you should, but I just wanted to make sure. I mean, there are different things that could qualify as adequate supervision, and in part that turns on the nature of the question to be answered. That is, the difficult question that is posed in this case, or the ultimate contested question is, is teeth whitening the practice of dentistry as defined by North Carolina law? That is a question of statutory interpretation. The North Carolina statute speaks of removing stains or accretions from the human teeth. There are arguments on both sides as to whether that encompasses the teeth whitening methods that are used today. That's the kind of dispute that is capable of being definitively resolved by the State. Breyer. But they'd have to give deference to the expert board's determination. That would be normal. They might or might not. If it's not, then you're going to have the neurology qualification determination made by some people in the State who are not neurologists. Now, that to me spells danger. I mean, the point I was going to make was the determination whether a particular individual is qualified to practice neurology is a different sort of question from the issue, is teeth whitening the practice of dentistry? That question is one of law that a court is capable of deciding. It might or might not give deference to the views of a particular administrative agency. In our view, it would certainly make sense not to, as a matter of State administrative law, not to give deference to the view of self-interested practitioners for the same reasons that — on that legal question, for the same reasons that — What if the — I'm sorry. For the same reason that we think the State action immunity shouldn't apply. What if a — one of the members of the board is appointed as a full-time member of the board for a one-year term, and he's called the board State supervisor? Is that good enough? I mean, it depends on what — first, it would — we would want to look into the question, does that alleviate his financial interest? What is the— No, it's only one — it's one year. But for that one year, he's not practicing dentistry or whatever. And that way, the supervisor is responsive to Justice Breyer's concern. The supervisor knows what he's talking about when it comes to dentistry. I guess in order even potentially to qualify as satisfying the act of supervision requirement, the one supervisory member would have to have the power to countermand the orders issued by the other members. If it were simply one, and he were designated a supervisor, but he didn't have the authority to— Okay. So he has the authority. For that one year, he can veto whatever the board decides to do. I'm hesitant to take a position on behalf of the FTC because it would turn on part — in part on would the expectation that this person will return to private practice after a year be sufficient to maintain his fundamentally private character? Well, I mean, the question that follows is what if all of the members of the board have to refrain from the practice of dentistry during the year that they serve? And you're saying you don't know what the answer will be to that? What the FTC will say to that? I know what the FTC will say to that. I guess part of what I would say in response to these hypotheticals, and it's not that they're not legitimate questions, but this seems to us to be the case at the furthest end of the spectrum from those. This is a case in which the only members of the board who actually participated in the decision to issue the cease and desist letters were practicing dentists. They were people who were required by law to be practicing dentists. They were appointed by other practicing dentists. The other thing I would say — Mr. Stewart, the problem with your answer, at least for me, is that you're being asked for the rule that we're going to announce, not just in this case, but to guide the decision-making for future courts. I mean, just to say this board, we could do it the way Judge Keenan did and say it was an elected board, but an appointed board is different. We can say one of a dozen sort of limitations or not. So what do we say? How do we articulate your rule? Stewart. I mean, the way I read both Judge Keenan's concurrence and the majority opinion is both of those said, at least where the members are selected by other practicing dentists, there is no State action immunity. We'll leave for another day the question whether the outcome would be different if the members were selected by the government. Sotomayor That's what the Supreme Court does. Stewart. Sotomayor It walks that line, and it goes and looks at the trajectory we're taking. And some of my colleagues have expressed the concern that the trajectory will involve us in case after case, trying to decide how far too far is. Stewart And frankly, if the Court wanted to say, as part of its opinion, as long as they are actually required by law to be practicing dentists, there's no State action immunity, but if the law doesn't require that and it happens to be the pattern of gubernatorial appointment, if the Court says that the outcome would, in fact, be different in that case, we would prefer that to a decision that says we're going to give these boards a blanket pass because we can foresee some hard questions at the end of the day. Breyer Write that down. Still, the problem in the back of my mind is there are now 311 million Americans who are going to have medical care. And this isn't the – I agree with you, this is at one extreme, but those words that you just enunciated seem to cover to exactly the same extent every medical specialty. And I've articulated that already, that that's my concern. So I wonder if you can do something a little bit better before we say that the doctors cannot be active doctors and decide on the qualifications of doctors. I guess the two things I – the two or three things I would say are, first, I think the decisions about whether particular individual practitioners will be licensed or have their license revoked is a fundamentally different type of determination from the legal question, is teeth whitening or some other generic type of service the practice of dentistry within particular State law. The second thing is, although, Justice Sotomayor, you're certainly right that the Court doesn't announce decisions that are good for one case only and leave every other question unresolved, the Court also – the Court also does proceed incrementally and it doesn't feel disabled from announcing the right rule in the case before it simply because it can foresee both that difficult cases will arise in the future and that the rule it's announcing won't clearly resolve it. I do have very long sentences, so it's very hard not to interrupt you. I don't agree with your first point. I don't see that there's an immense difference between establishing the standards for a profession and excluding an individual from the profession. My goodness, what is a more obvious restriction of competition than preventing somebody from competing? I don't see how you draw that line. Well, it's one thing to say that so-and-so can't practice, but it's another thing to say that teeth whitening is part of the practice. It seems to me they both involve anti-competitive decisions. They involve anti-competitive decisions and they involve – they require the State to tap into expertise. That is, the basic decision to prohibit unlicensed individuals from removing stains or accretions from teeth was made by the North Carolina legislature back many decades ago. Obviously, the North Carolina legislature is not an expert body. It's not composed of dentists, but presumably they got input from the dental profession and they tapped into the relative expertise for purposes of making their decision. The determination, once the statutory structure has been established, the determination whether teeth whitening falls within one of the enumerated categories is not really establishing the standards. It is interpreting the existing standards. And that does require some interstitial discretionary decision-making. And our point, as Justice Kagan was alluding to earlier, is we want those interstitial decisions to be made by disinterested persons, or at least if they're not made by disinterested persons, we don't feel confident that they truly reflect the policy choices of the State legislature itself. What would happen if the North Carolina courts were to decide tomorrow that whitening is the practice of dentistry under this old statute? If the North Carolina — I mean, to make the case clearest, if the North Carolina Supreme Court held as an authoritative construction of State law, I mean, that would basically be the end of it. There could still be potential arguments that the mode of enforcement had anticompetitive consequences that went beyond the basic prohibition. But for all intents and purposes, just as if the North Carolina's legislature had specified that non-dentists cannot lawfully perform teeth whitening, that policy choice would not be subject to second-guessing by the FTC or a Federal antitrust court. Similarly, if the North Carolina Supreme Court said we construe the existing statute to have that meeting, that determination also wouldn't be subject to review by an antitrust court. And there's been a lot of — Alitoso, just to follow up on that, so was the FTC decision predicated on the proposition that this was not — whitening teeth was not within this old statute? It was — the FTC specifically declined to announce a decision one way or the other. That is, the complaint counsel in prosecuting the case before the commission offered reasons to believe that teeth whitening was not covered by this provision, and basically there were two reasons. The first is that scientifically, teeth whitening does not result in the removal of stains or accretions, that the staining material remains in the enamel. It's simply bleached so that the discoloration is less and it's not so evident. The second type of evidence that complaint counsel offered was that back when the statute was passed, the methods of removing stains and accretions that would have been familiar to the legislature involved scraping, chipping, to some extent, electronic instruments. It was the type of procedure that could not safely be done by people who lacked expertise. Alitoso, you know, last week we had a case in which the North Carolina court of appeals held that an old motor vehicle statute required only one brake light rather than two brake lights. So it doesn't seem that an interpretation of this statute to cover whitening would be completely out of the question. We agree. And as I say, the commission specifically declined to announce a decision one way or the other as to what was the correct reading of North Carolina law. But I think that's not the case. Ginsburg. I thought you made the stipulation that this was an articulated State policy. And the question was, must there be an addition supervision? But you conceded for purposes of this argument that the articulated State policy, didn't you? Well, we conceded, the commission assumed arguendo that there was a clearly articulated State policy. But if, for instance, rather than having the dental board composed of dentists, they were composed of disinterested bureaucrats who would hear from dentists but would make their own determination, the clear articulation requirement would be satisfied because clear articulation can't be satisfied by something phrased at a relatively high level of generality. And so the consequences of a decision in your favor were that no professionals or representative of any occupation would ever serve on a government board where there's any chance of antitrust liability. Would that, in your view, advance the purposes of the antitrust laws? I mean, if we thought that were the consequence of the Court's decision, then we would be very leery of urging this result. But we see in cases like Goldfarb that the Virginia bar, for instance, was held to be susceptible to suit under the antitrust laws and could not invoke the State action immunity because it was out ahead of the Virginia Supreme Court. And that hasn't had the effect of inducing members of the bar en masse to refrain from bar association activities. Just to finish my answer to Justice Ginsburg, even if the statute is phrased at a relatively high level of generality that leaves some interstitial questions unresolved, it can still satisfy clear articulation. So if we had a body of disinterested bureaucrats who said we interpret the phrase removal of stains and accretions to include teeth whitening, we'd have clear articulation in the statute even though it didn't resolve every question. And then we would have a determination made by a body that would not require active supervision, and that would be good enough. That would satisfy the prerequisites to State action immunity as this Court has articulated. If I could, I'd like to make two additional points. The first is that there was a fair amount of talk in the first part of the argument about the oath. And the oath is at North Carolina General Statute 11-7. And basically the members of the board, like people who are designated State officials generally, will take an oath to support the constitutions of North Carolina and the state of North Carolina. It's essentially a State law version of the oath that new members of this Court's bar take in, take when they're sworn, as was done this morning. I believe the members of the bar, I know the members of the bar swear to support the Constitution of the United States. I believe that they also swear to faithfully execute their duties as officers of the Court and members of the bar of this Court. When private counsel take that oath, no one imagines that they lose their private character. And in particular, nobody construes that oath as a promise by private counsel that he will place the interests of the general public ahead of the interests of his clients. Everybody understands that vigorous representation of a particular constituency may be consistent with. Scalia. That's because what they're promising to do is to serve as faithful private  If they were being sworn into an agency and promised to execute their duties as in accordance with law, it would be quite different. And that's what's happening here. There's nothing in the oath that requires them to place the interests of the public on a par with the interests of the dental community. And everything about their selection, the fact that they are required to be dentists, the fact that they are selected by other dentists, reinforces the sense that they are expected to treat the dental community as their constituency. And the last thing I'd say is a lot of the debate in areas like this centers on the profession regulating itself. Urologists regulating urologists, dentists regulating dentists. A lot of what the Board does is dentists regulating dentists. But this case is not about that. This case is about dentists regulating non-dentists. And in particular, dentists telling dentists, telling non-dentists, in what endeavors can you legally compete with dentists? And so the concerns that underlie the Sherman Act with unfair restrictions on competition are at their zenith in a case like this one. Thank you. Thank you, counsel. Mr. Muthan, you have four minutes remaining. I'd like to begin with Justice Breyer's question. The ultimate question in this case is how to balance a cost-benefit question. There are benefits from having experts and there are risks from having experts be regulators. And the question is who should make the decision of how to weigh those costs and balance those risks? And what the government is arguing is that the Federal antitrust law has second-guessed the State's decision about how to balance that risk. The States have decided that the better way to handle the situation when you have experts like neurologists is to have some level of supervision, but not the level of active supervision that is required for private parties. Why not simply say that the supervisor, be it the court or be it the commission, must, when it decides the lawfulness of the agency's action or the private board's action, take into account the risks of self-dealing as well as the State policy that favors them making this decision? And where the consequence is an unreasonable weighing, it is unlawful under State law. Well, that way you bring in an antitrust element, it would comport with MidCal, you would be guarding against self-dealing without interfering tremendously with the State. Well, for two reasons. First, Your Honor, because the States are allowed to act anti-competitively. The States don't have to make a balance between anti-competitive benefits and public benefits. The States can unabashedly act anti-competitively if they wish. It would also be extremely complicated because what you would essentially have are two different versions of active supervision. One standard of active supervision that applies to private parties and one standard of active supervision that applies to public officials who also have private interests. That's the reason why Mr. Stewart wouldn't answer your question by saying any of those things would work, because they will never say that that stuff works for purely private parties. They will never say that just mere the ability to be able to have some level of review is good enough for private parties, because even they recognize there is a fundamental difference between a private party and a public official who also has private interests. Kagan. Mr. Newman, the active supervision requirement has been around a long time, and it varies case by case and State by State. There are a wide, wide, wide variety of mechanisms that might satisfy the active supervision prong in a particular State with respect to a particular kind of activity. But what you're suggesting is that that prong be simply removed from the analysis, that it be utterly irrelevant, that there's no supervision at all. And that's a very different and much more dramatic thing. Well, what I'm suggesting is twofold. First, the active supervision is a fairly rigorous standard, and I'm sure the FTC would have told you that if you had asked them that question precisely. And I'm saying that the issue here isn't whether these people will be unsupervised. The question is who will determine what level of supervision. And the question is whether the State should decide that a lower level of supervision is the appropriate one, balancing expertise versus the risk of conflicts of interest. And especially when you're dealing with supervision of market participants, there's a grave risk that if you require too much supervision as a condition of antitrust immunity, no one will serve on these boards. Mr. Seward said he would be leery of advocating this position if it would have a high deterrence effect. Well, there is an amicus brief from the ADA and the AMA and from 23 States, all of whom express grave concern that if you require supervision, market participants will not  And the sort of concern this Court has recognized in cases like Hoover v. Ronwin, it is fundamentally up to the State to determine how to bear this risk, whether they want to say that the benefits of expertise outweigh the risks of conflicts of interest. That is what this Court held in cases like Omni, that the Sherman Act is not intended to serve as some general rule of good government. It is up to the State to determine how they want to regulate as sovereigns. The final point I'd like to make is about Justice Alito's question about what would happen if the State Supreme Court tomorrow said that teeth whitening was the practice of dentistry. I'm not quite sure I understood Mr. Seward's position, but the holding below is that active supervision is required regardless of whether there is clear articulation. So I would think that it would be liability regardless of what the Court did in the future. Thank you, counsel. The case is submitted.